ADA S. WILSON v. MARTIN MEMORIAL HOSPITAL, INC., DR. E. C. ASHBY AND DR. L. L. TELLE.

(Filed 20 September, 1950.)

**1. Hospitals § 3—**

In this action against two physicians and a hospital for malpractice, nonsuit as to the hospital *held* properly entered on authority of *Smith v. Duke University*, 219 N.C. 628.

**2. Appeal and Error § 40i—**

In reviewing the trial court's ruling on motion to nonsuit, the Supreme Court will consider the evidence in the light most favorable to plaintiff, giving her every reasonable inference properly deducible therefrom.

**3. Physicians and Surgeons § 10—**

Where the physician engaged by the patient arranges that during his absence the patient should be under the care of another physician, previously unknown to the patient, such substituted physician is the agent of the former in the performance of the necessary services to the patient which the former had contracted to render.

**4. Physicians and Surgeons § 14—**

A physician is not an insurer, and he may be held responsible for the unsuccessful outcome of his treatment only if it proximately results from lack of learning, skill and ability ordinarily possessed by others similarly situated, or from his failure to exercise reasonable care and diligence in the application of his knowledge and skill to the patient's case.

**5. Physicians and Surgeons § 20—**

Where the evidence is such that the lack of reasonable care and diligence in the application of the physician's knowledge and skill in treating the patient's case is patent, requiring only common knowledge and experience to understand and judge it, expert testimony is not necessary to establish a cause of action for malpractice.

**6. Same—Evidence in this case held sufficient to overrule nonsuit in plaintiff's action for malpractice.**

Evidence tending to show that one physician, acting as agent of his codefendant, stated that a Caesarean was necessary to deliver plaintiff's child but that he was unable to use his best judgment in the matter, that the operation was not performed, that plaintiff remained in the hospital for more than a week after her baby was born dead, and was then permitted to leave without either of defendant physicians having examined her, and that an examination by another physician after she had returned home disclosed that she had a high temperature, was badly torn and lacerated, and that stitches used to sew lacerated places after the child's birth had pulled loose, or the tissue had decomposed and the stitches pulled out, *is held* sufficient to overrule defendants' motion to nonsuit in an action against them for malpractice.

APPEAL by plaintiff from *Moore, J.,* May Term, 1950, of SURRY.

This was an action to recover damages for injuries alleged to have been caused by the negligence of the defendants while plaintiff was a patient in the hospital of the corporate defendant and under the professional care of the individual defendants.

The plaintiff testified that she was the wife of Ernest Wilson, and when she discovered she was pregnant she engaged the services of defendant Dr. Ashby, and consulted him frequently as to her condition. In accordance with his instructions when birth pains began she went to defendant hospital on Sunday, May 9, 1948, and was put to bed by a nurse. She asked for Dr. Ashby, but he was not there. Monday her pains continued and at lunch time she asked again for Dr. Ashby. That afternoon defendant Dr. Telle, whom she had not known before, came in and said he was checking Dr. Ashby's patients. In reply to her request that something be done for her he promised relief by nine o'clock that night. He made no statement as to the whereabouts of Dr. Ashby and made no examination of the plaintiff. Labor pains continued. She saw Dr. Telle Tuesday morning when X-ray pictures were taken. He said, "It is going to be a case of an operation. This baby is so large you cannot give a natural birth to it." She asked him to hurry up as she could not suffer much more. She became unconscious and remained so until Wednesday afternoon. Thursday morning Dr. Telle came to her bed, felt her pulse and told her to forget about the stitches. She saw Dr. Telle again Friday morning. He felt her pulse but made no checkup or examination of her abdomen or any of the stitches. She saw Dr. Ashby Satur-

WILSON *v.* HOSPITAL.

day morning. He merely raised her eyelids and said, "You are going to be all right." Neither he nor Dr. Telle made any examination of any part of her body. She remained in the hospital until Friday, the 21st of May, when she was permitted to leave. At that time her bed had an offensive odor. Shortly after she reached home she called in Dr. Flippin, who treated her for two months. Her condition was such that bowel movements passed through her vagina and she was at times unable to control bowel action. This condition still exists causing suffering and inconvenience.

Dr. Flippin testified when he examined her after her discharge from the hospital he found her temperature between 102 and 103, and a profuse discharge. He observed tears and bruises. He said she was torn very badly, and that it looked as if she had been sewed and the stitches had pulled loose or broken down, or the tissues had decomposed and the stitches pulled out.

Plaintiff's husband Ernest Wilson testified he saw Dr. Telle at the hospital on Tuesday and he said, "Your wife is going to have a baby, and it is a Caesarean case because the baby is too large for a natural birth." He told the doctor to go ahead. Plaintiff was being given glucose and looked like she was going into convulsions and had to be held on the bed, and later became unconscious. Dr. Telle told him she was making a little progress and they would wait until five o'clock, though witness urged that he proceed with operation as she was suffering so much. Dr. Telle said they would keep constant check on her, and that by use of X-rays they knew there was no way out but a Caesarean operation; that Dr. Ashby had left his patients in his care. Later when asked about performing the operation which he had said was necessary, Dr. Telle replied, "I am handicapped. Dr. Ashby left his patients in my care, but I still don't have authority to do what I want to do." No explanation was offered. At eight o'clock Tuesday evening when witness left the hospital plaintiff was still "hollering" and Dr. Telle was not there—had gone to a nurses' graduation. This witness saw Dr. Telle Wednesday morning and he said they had to take the baby "from below." Witness saw the baby at the undertaker. Its head was badly bruised and skinned, and there was a black circular indentation in the scalp "like it had been out so far and couldn't get any farther." The baby weighed 11 or 12 pounds. Later Dr. Telle assured witness he would check over plaintiff before she left the hospital, but no examination of any kind was made, and she was permitted to leave. When Dr. Flippin came and examined the plaintiff witness observed a long place apparently unsewed, and that pus was pouring out. Bowel movements came through the vagina.

Another witness for plaintiff testified Dr. Telle said he could not go ahead and use his judgment—he was handicapped.

At the close of plaintiff's testimony defendants' motion for judgment of nonsuit was allowed, and plaintiff excepted and appealed.

*John H. Blalock and Dallas C. Kirby for plaintiff, appellant.*
*Folger & Folger for defendants, appellees.*

DEVIN, J.    The judgment of nonsuit as to the defendant Martin Memorial Hospital, Inc., was properly entered (*Smith v. Duke University,* 219 N.C. 628, 14 S.E. 2d 643; *Penland v. Hospital,* 199 N.C. 314, 154 S.E. 406), but a different question is presented by plaintiff's appeal from the judgment of nonsuit as to the individual defendants.

In reviewing the trial judge's ruling on the motion to nonsuit, the established rule requires that we consider the evidence offered on behalf of the plaintiff in the light most favorable for her, and that she is entitled to all reasonable inferences in her favor which properly may be drawn from the evidence.

Viewed in this light we think there was some evidence that the defendants Dr. Ashby and Dr. Telle failed to exercise due care in the treatment of the plaintiff, and that this proximately resulted in injury.

The plaintiff's evidence tends to show that Dr. Ashby, who had been engaged to treat the plaintiff professionally in her pregnancy and childbirth, was absent at the time she entered the hospital for her accouchement, and that he arranged for the plaintiff to be under the care of Dr. Telle, previously unknown to the plaintiff, who thereafter treated her.    This would seem to permit the inference that Dr. Ashby thereby constituted Dr. Telle his agent for the performance of the necessary services to the plaintiff which he had contracted to render.    *Nash v. Royster,* 189 N.C. 408, 127 S.E. 356.

It is the duty of a physician who has agreed to render professional services to a patient not only to use due care and diligence in his treatment of the patient, but he must exercise reasonable care to see that such attention is given as the case properly requires.    A physician whose services are thus engaged undertakes that he possesses the requisite degree of learning, skill and ability necessary for the practice of his profession, such as others similarly situated ordinarily possess, and that he will exercise ordinary care and diligence in the use of his skill and in the application of his knowledge in the patient's case, and that he will use his best judgment in the treatment and care of the case entrusted to him.

The physician is in no sense an insurer, nor is he infallible.    Absolute accuracy in judgment and in practice is not required, nor may he be held responsible for the unsuccessful outcome of his treatment, unless it proximately result from the omission to use reasonable care and diligence under the circumstances, or from failure to use his best judgment in the

treatment. It is required not only that he have that reasonable amount of knowledge and skill he holds himself out to possess, but also that he use it in the treatment of his patient. *Nash v. Royster,* 189 N.C. 408, 127 S.E. 356; *Covington v. Wyatt,* 196 N.C. 367, 145 S.E. 673; *Covington v. James,* 214 N.C. 71, 197 S.E. 701; *Groce v. Myers,* 224 N.C. 165, 29 S.E. 2d 523; 41 A.J. 198, 201. "It has been repeatedly held here that the physician or surgeon who undertakes to treat a patient implies that he possesses the degree of professional learning, skill and ability which others similarly situated ordinarily possess; that he will exercise reasonable care and diligence in the application of his knowledge and skill to the patient's case; and exert his best judgment in the treatment and care of the case entrusted to him." *Buckner v. Wheeldon,* 225 N.C. 62 (65), 33 S.E. 2d 480. Liability does not flow from the mere fact of an imperfect result. The physician may only be held responsible for an injury suffered by his patient when the injurious result flows proximately from his omission to exercise reasonable care and diligence in the application of his knowledge and skill to the treatment of his patient. *Grier v. Phillips,* 230 N.C. 672, 55 S.E. 2d 485; *Vann v. Harden,* 187 Va. 555. It is not in all cases essential that plaintiff's assertion of claim for compensation for an injury alleged to have resulted from the failure of the physician to exercise due care in the treatment of his patient should be supported by expert testimony. When the evidence of lack of ordinary care is patent and such as to be within the comprehension of laymen, requiring only common knowledge and experience to understand and judge it, expert testimony is not required. *Groce v. Myers,* 224 N.C. 165, 29 S.E. 2d 553; *Covington v. James,* 214 N.C. 71, 197 S.E. 701; *Richeson v. Roebber,* 349 Mo. 132, 141 A.L.R. 1 (note); *Cornwell v. Sleicher,* 119 Wash. 573; *Connor v. O'Donnell,* 230 Mass. 39.

In the case at bar there is some evidence from the testimony of the plaintiff and others as to statements made by Dr. Telle that he knew from X-rays that the method used for the attempted delivery of the child was impracticable and would likely result in injury. He is reported to have said a Caesarean operation was imperative, and later that he was "handicapped" and unable to use his best judgment. There was also some evidence of failure to exercise ordinary care in the treatment of the serious lacerations resulting from the delivery of the child "from below," and failure to examine and discover the torn stitches and decomposed tissues. According to the testimony of Dr. Flippin she was "torn very badly," and she testified she remained in the hospital for more than a week thereafter, and was then permitted to leave without either of the defendants having made an examination. 141 A.L.R. 111, *et seq.* (Annotation).

Whether there was failure to exercise due care in these particulars and whether such failure was the proximate cause of the injury plaintiff complains of were matters for the jury under proper instructions from the court. Only plaintiff's evidence has been heard. There was no evidence that the defendants were lacking in professional learning or skill, but negligent failure to make such knowledge and skill available to the plaintiff constitutes her complaint. On another hearing defendants will have opportunity to present their defense to these allegations.

For the reasons herein set out the judgment of nonsuit as to defendant Hospital is affirmed, and judgment of nonsuit as to defendants Ashby and Telle is reversed.