AMERICAN ELEVATOR COMPANY, A COPARTNERSHIP; GERALD J. MONAGHAN, DBA AMERICAN ELEVATOR COMPANY AND JOHN M. DOYLE, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF PATRICK MONAGHAN, DECEASED, APPELLANTS, *v.* DEL L. BRISCOE, RESPONDENT.

No. 9069

December 27, 1977                    572 P.2d 534

*Wait, Shamberger, Georgeson, and McQuaid,* Reno, for Appellants.

*Peter Chase Neumann,* Reno, for Respondent.

## OPINION

By the Court, MANOUKIAN, J.:

This case involves the claimed negligent maintenance of an elevator in the Holiday Hotel in Reno. On February 22, 1974, respondent Briscoe, an employee of the hotel, entered the elevator at the fifth floor intending to go to the sixth floor. Although Briscoe pressed the correct button, the elevator suddenly began a descent ending with a series of jarring stops at or near the first floor and finally settling to the basement level.

Several other hotel employees were in the vicinity when Briscoe exited the elevator and observed him in a somewhat shaken state, suffering apparent back pain. Immediately thereafter, two of the employees transported Briscoe to the Washoe Medical Center hospital in Reno where he was diagnosed as having sustained serious spinal injury. Briscoe subsequently underwent two spinal surgeries, and the medical prognosis is that, despite constant medication, his injuries are permanent.

Appellants proffer two major claims of error for our determination: (1) the trial court's instruction to the jury on the doctrine of *res ipsa loquitur;* and (2) the trial court's refusal

to admit into evidence respondent's polygraph results offered by appellants.

In his complaint, respondent alleged that American negligently and carelessly maintained the elevator which resulted in his injuries. He additionally pleaded the liability of American under the doctrine of *res ipsa loquitur*.

Commencing in 1970, except for inconsequential "housekeeping" maintenance, American was under an exclusive contractual duty to service and maintain all the elevators in the Holiday Hotel. On the same day, but just prior to the time that Briscoe suffered his injury, an employee of American had serviced the subject elevator. It was shortly thereafter that Briscoe suffered injury.

Later that day, two employees of American and an elevator inspector from the Nevada Industrial Commission examined the elevator and could find no apparent reason for the reported trouble. The following day, however, the elevator malfunctioned and become inoperative. When examined, electrical contact elements in the elevator's operating system were found to be dirty and greasy. An employee of American, cleansing these elements, discovered a cracked electrical contact housing. He testified that this condition would be one explanation why the elevator stopped midshaft unexpectedly. Expert testimony corroborated that failure of these electrical contacts could cause an unexpected stoppage of the elevator. The record further shows that there was a dramatic reduction in American's maintenance at the Holiday from a relatively standard fifty hours of maintenance per month in December, 1973, to a rather abnormally deficient twelve hours in January of 1974, the month before the Briscoe accident.

Expert testimony indicated the amount of force to which an occupant of a jerking elevator would be subjected, and appellant's medical expert conceded the possibility of spinal injury from relatively insignificant pressures on the spinal column. He further conceded that respondent may have received some injury in the elevator.

On the request of his counsel, Briscoe submitted to a polygraph examination to determine whether he was pursuing a fraudulent claim. The polygraph examiner was hired by Briscoe's counsel and was to report only to him. Appellants' counsel, through an unusual set of circumstances incidental to discovery motions, obtained a copy of the test results.

During trial a motion in limine was made by respondent and an order issued precluding any mention during the trial of the polygraph test.

After rendition of the verdict in favor of respondent, judgment was entered in the sum of $150,000.00 from which appellants appeal.

### 1. *The Res Ipsa Loquitur Instruction.*

Appellants contend that the giving of the *res ipsa loquitur* instruction[1] to the jury constituted reversible error. Appellants do not quarrel with the substance of that instruction, doubtlessly acknowledging it as a correct statement of the standard announced in Bialer v. St. Mary's Hospital, 83 Nev. 241, 427 P.2d 957 (1967).

Appellants premise this allegation of error on the fact that no evidence was introduced at trial to indicate that it ever had exclusive control over the instrumentality causing harm. Appellants focus on respondent Briscoe's remark during cross-examination that the elevator fell rapidly and then argue that no evidence was ever offered to connect this "overspeeding" to any alleged misfeasance or non-feasance of appellants. In summary, appellants argue that any overspeeding was a design defect and that Otis Elevator, the manufacturer previously dismissed from the suit, must assume liability. American Elevator, it contends, was only involved through a service maintenance agreement and cannot be held accountable absent any showing of negligent maintenance. There *is* an abundance of evidence demonstrating appellants' exclusive control. Otis installed the elevator approximately twenty years prior to this accident, with appellants' assuming maintenance in the early

---

[1] Instruction number 16 reads as follows:

Plaintiff claims that there was an accidental occurrence; defendant denies it. If you should find that as claimed by the plaintiff there was an accidental occurrence and the plaintiff was injured thereby, then you are instructed as follows:

It is a rule of law that negligence may be established without proof of specific acts or omissions. This is based on a special doctrine of the law which may be applied if you find from the evidence the following:

First: The fact that some certain instrumentality by which injury to the plaintiff was proximately caused, was in the possession and under the exclusive control of a defendant at the time the cause of injury was set in motion; it appearing on the face of the event that the injury was caused by some act or omission incident to defendant's management.

Second: The fact that the accident was one of such nature as does not happen in the ordinary course of things, if those who have control of the instrumentality use ordinary care.

Third: The fact that the circumstances surrounding the causing of the accident was such that the plaintiff is not in a position to know what specific conduct was the cause, whereas the one in charge of the instrumentality may reasonably be expected to know and be able to explain how the accident was caused, or at least be able to show that no failure of duty on his part was a cause.

1970's. Sufficient evidence was proffered to avoid any inference that Otis or any other party except the appellants embarked upon even the slightest attempt at maintenance. Neither was any evidence presented demonstrating possible manufacturer defects.

*Res ipsa loquitur* is a balancing doctrine, and while the plaintiff need not show the exact cause of an injury, he must at least show that it is more probable than not that the injury resulted from the defendant's breach of duty. If that is shown, an inference of negligence on the part of defendant arises, and it is then incumbent on the defendant to come forward with rebuttal evidence.

Appellants contend that respondent, to benefit from *res ipsa,* must demonstrate that it is not equally probable that other causes might have effected the same result. To this end, appellants rely heavily upon Bias v. Montgomery Elevator Co. of Kansas, Inc., 532 P.2d 1053 (Kan. 1975). Appellants' reliance is misplaced. The salient language in *Bias,* in rejecting a *res ipsa loquitur* theory of relief in an "elevator fall" case, reads:

> Plaintiff has introduced no evidence which would indicate it is probable the accident was caused by negligent servicing rather than by negligent manufacturing or installation.

*Id.* at 1058.

Nor do appellants' other authorities aid them. They generally hold that reliance upon the doctrine is precluded whenever plaintiff fails to prove the exclusive control by defendant over the instrumentality causing harm. Oil Building Corporation v. Hermann, 488 P.2d 1126 (Colo.App. 1971); Koch v. Otis Elevator Company, 200 N.Y.S.2d 700 (1960).

In appellants' cited cases, the plaintiff failed to meet his minimal burden in order to establish a *prima facie* case for the application of *res ipsa loquitur.* To the contrary, respondent here has presented facts to the jury which would indicate that some negligent maintenance had occurred. The Briscoe incident was not an isolated phenomenon. Evidence was adduced through several hotel employees which showed anomalies in the elevator's operation on many occasions prior to the Briscoe accident. Several hotel employees had actually fallen in the elevator as a consequence of its abrupt stops and jerks, and it was adequately shown that stoppage of the elevator may have been attributable to negligent maintenance.

To require a plaintiff to establish exclusive control in the defendant with respect to *any possible cause* of the accident before permitting the application of *res ipsa loquitur* would emasculate the doctrine. He was required, *as was done,* only to produce sufficient evidence from which it could be said that it was more likely than not that it was negligence on the part of his adversary. There was a reasonable showing by respondent of variances from the recognized standards of maintenance and that the same could have possibly proximately caused his injuries.

Had appellants established possible design defect, a contrary verdict may have been rendered. However, there was no evidence of design defect, and the jury found that appellants failed to discharge their burden of explanation. Newing v. Cheatham, 540 P.2d 33 (Cal. 1975). *See also,* Shoshone Coca-Cola v. Dolinski, 82 Nev. 439, 420 P.2d 855 (1966). Once the *prima facie res ipsa* case had been established, the burden shifted to the appellants to exculpate themselves by showing that the negligence of another was an equally plausible cause or that no failure of duty on their parts was a cause. On this record, the jury was not constrained to find that appellants had satisfied the burden that had shifted to them.

2. *The Polygraph Examination.*

The results of the polygraph examination administered to respondent were purportedly unfavorable, and appellants doubtlessly intended to impeach him with that evidence. The trial court precluded appellants' use of the examination results, relying on NRS 49.085 and NRS 49.095 pertaining to the attorney-client privilege. The trial court further rejected the offer of evidence, determining that the foundation was inadequate and the evidence "scientifically unreliable." This Court elects to follow its holding in Warden v. Lischko, 90 Nev. 221, 523 P.2d 6 (1974). In *Lischko,* we stated:

> Although the results of those tests may weigh in favor of the petitioner's truthfulness, neither narco-interrogation nor the lie detector method has received court recognition as possessing the trustworthiness and reliability needed to accord the results the status of competent evidence. Vol. 3A, Wigmore, Chadbourn Revision, §§ 998, 999 (1970).

*Id.* at 224, 523 P.2d at 8.

We decide, in these circumstances, that a polygraph examiner is not within our testimony-by-experts statute, NRS 50.275, since we are not satisfied that this type evidence has received general scientific acceptance. Nor are we here disposed to apply the normal standard of admissibility, which simply weighs the probative value of the proffered evidence against traditional policy considerations, such as the possibilities of misleading, confusing, or prejudicing the jury or of unduly consuming judicial time. *See,* NRS 48.035.

Appellants' remaining contentions and respondent's requested sanctions for frivolity, (NRAP 38), being without merit, are rejected.

The judgment of the lower court is affirmed.[2]

BATJER, C. J., and MOWBRAY and GUNDERSON, JJ., and HOYT, D. J., concur.

[2]The Governor designated Merlyn Hoyt, Judge of the Seventh Judicial District, to sit in the place of the HONORABLE GORDON THOMPSON, Justice, who was disqualified. Nev. Const. art. 6, § 4.