**LYNDEN TRANSPORT, INC., d/b/a Alaska Marine Trucking, Appellant,**

v.

**George HARAGAN, Appellee.**

**No. 4885.**

Supreme Court of Alaska.

Feb. 13, 1981.

---

Richard A. Helm and Mark L. Figura, Burr, Pease & Kurtz, Inc., Anchorage, for appellant.

L. Ames Luce, Kelly & Luce, Anchorage, for appellee.

Before RABINOWITZ, C. J., CONNOR, and MATTHEWS, JJ., DIMOND, Senior Justice, and SEABORN J. BUCKALEW, Superior Court Judge.

**OPINION**

CONNOR, Justice.

In this appeal, appellant challenges a jury verdict and judgment finding it negligent in the collapse of a three-year-old Freuhauf flatbed trailer, and therefore liable to appellee for personal injuries arising therefrom.

The trailer involved, No. 080, is 40 feet long and has a carrying capacity of 70,000 pounds. It was manufactured in 1973 and was purchased new by Transport Maintenance and Leasing, a trailer leasing company. Initially, Transport leased trailer No. 080 to Madsen Terminals, which used the trailer primarily in California. Madsen returned the trailer in March, 1974, having reported no problems with the trailer during the course of the lease. Trailer No. 080 was next leased to appellant Lynden Transport, in October, 1975. Before delivery the trailer was inspected and found to be in good condition. At that time the trailer had traveled approximately 70,000 miles, making it still rather new relative to its long term capabilities.

Lynden used the trailer in Seattle and in various points in Alaska, experiencing no problems until August, 1976. In August, 1976, the trailer was loaded in Seattle by Ace Galvanizing with 38,457 pounds of structural steel for shipment by Lynden to C.F. Braun in North Kenai. The trailer was transported to Anchorage, via TOTE, and from there Lynden hauled the trailer to C.F. Braun's plant in North Kenai. There Lynden's employee spotted the trailer (lowered the trailer's landing gear and unhooked the truck) and left it for unloading by C.F. Braun.

To facilitate unloading, an employee of C.F. Braun moved the trailer to an unloading bay. There employees of C.F. Braun, including appellee, began unloading the trailer. As appellee removed the chains holding the loan on the trailer, another employee positioned a crane immediately behind the trailer. While Haragan was standing on the load attaching a choker around a

piece of steel, the trailer collapsed, throwing him from the trailer and causing him injury. The apparent cause of the accident was the collapse of one of the two landing gears on the trailer.[1]

At trial the parties stipulated that Haragan had sustained bodily injury, that his injuries were caused by collapse of the trailer, and that his injuries resulted in damage in the amount of $150,000. This left only two issues to be resolved at trial: (1) was appellant, Lynden Transport, negligent and, (2) if negligent, was such negligence the proximate cause of the collapse of the trailer? At trial, appellee claimed that the landing gear collapsed because of improper or inadequate maintenance. His theory of the case was premised on the breach of three legal duties by Lynden Transport: (1) the general common law duty of due care; (2) the common law duty of a supplier of chattels for use by third persons without inspection; and (3) the specific legislatively imposed duty of 49 C.F.R. 396.2, which requires a carrier to "systematically inspect and maintain . . . all motor vehicles subject to his control."

At trial, in an attempt to explain why the trailer's landing gear collapsed, Haragan produced five eyewitnesses who variously testified as to the corroded condition of the landing gear.[2] Additionally, he introduced the testimony of Dr. Raymond Taggart, an expert on mechanical engineering and metallurgy, who testified that corrosion of the diagonal struts of a landing gear such as the one presumably used on Trailer No. 080 would substantially reduce the ability of the trailer to resist eccentric loading and was a reasonable explanation for the collapse of the trailer.[3] Additionally, appellee introduced evidence which, if believed, tended to eliminate any causes not attributable to the defendant's conduct.

At the close of the evidence, the case was submitted to the jury with instructions on, *inter alia*, Haragan's three theories of duty and on the doctrine of *res ipsa loquitur*. The jury returned a verdict in favor of Haragan. Lynden Transport then moved for judgment n. o. v. or, in the alternative, for a new trial. After denial of these motions, Lynden Transport now appeals.

### I. Sufficiency of the Evidence

█ Appellant asserts that the evidence adduced at trial was insufficient to support the jury's verdict because Haragan introduced no evidence regarding the standard of care owned by trailer carriers. Appellant's argument is as follows: Haragan failed to show how much rust a reasonable operator would permit to accumulate on his landing gear, how such rust can be detected, and how it can be avoided; thus, since the average juror does not possess such knowledge, and since mere evidence of corrosion on the landing gear is insufficient by itself to prove negligence, Haragan was re-

---

1. The immediate cause of the trailer's collapse does not appear to be disputed. Plaintiff produced undisputed eyewitness testimony that after the accident the diagonal struts of the landing gear were broken and twisted. Moreover, Dr. Taggart, plaintiff's mechanical engineering and metallurgy expert, testified that the collapse was begun by a failure of the diagonal struts of the landing gear. What is not known, but which plaintiff sought to prove at trial, is what caused the diagonal struts to fail.

2. These witnesses testified that the landing gear had a couple of loose bolts, looked as though it had not been greased in quite awhile, and was "pretty rusty;" that both the landing gear and the diagonal struts were rusty and looked like old iron; and that the whole undercarriage of the trailer looked rusty. One witness testified that the landing gear and diagonal struts had "flaky rust." Appellant correct-

ly notes that none of these witnesses testified that the amount of rust observed was "abnormal." However, the clear impact of each witness' testimony is that the landing gear was not merely rusty, but inordinately so.

3. Identification of the exact cause of the landing gear's failure was hindered if not made impossible by the unavailability of the actual landing gear which collapsed. This unavailability resulted from defendant's failure to maintain a record of repairs performed on Trailer No. 080 following the accident. Dr. Taggart's testimony was based on an examination of Trailer No. 080's landing gear after repair and by examining photographs of the damaged landing gear taken shortly after the accident. Whether the landing gear which Dr. Taggart inspected is of the same type as that involved in the accident is unknown.

quired to introduce expert testimony to show a breach of the duty of due care. We disagree.

A similar claim was made in *Northern Lights Motel, Inc. v. Sweaney*, 561 P.2d 1176, 1192 (Alaska 1977). In that case, which involved a motel fire, plaintiff introduced evidence of the lack of certain safeguards such as smoke detectors, a sprinkler system and a resident manager. Defendant objected to the introduction of such evidence on the ground that such evidence was irrelevant in the absence of a community standard requiring such safeguards. Rejecting this claim, we said:

"We do not see why the use of an all night manager, or a sprinkler or smoke detectors, is a matter of such professional abstrusity that standards can be determined only with the aid of expert testimony. This may be true in the case of one-hour construction in buildings or other technical matters; but it is difficult to imagine what areas of business endeavor would not require expert testimony if expert testimony were required here."

We think *Northern Lights* is applicable to the present case. Detection and avoidance of rust, or the deleterious effects that rust can have on metal, is not a matter "of such professional abstrusity that standards can be determined only with the aid of expert testimony." *Id.* Since the issue of appellant's negligence was submitted to the jury on evidence that the landing gear was "pretty rusty" and that this condition was readily visible to anyone observing the undercarriage of the trailer, we fail to see how expert testimony would have materially aided the jury.

Appellant cites three cases as primary support for its argument. *Miller v. Los Angeles County Flood Control Dist.*, 8 Cal.3d 689, 106 Cal.Rptr. 1, 505 P.2d 193 (1973); *Contreras v. St. Lukes Hospital*, 78 Cal.App.3d 919, 144 Cal.Rptr. 647 (1978); *Ballance v. Wentz*, 22 N.C.App. 363, 206 S.E.2d 734 (1974), *aff'd*, 286 N.C. 294, 210 S.E.2d 390 (1974). Each case is distinguishable, however. The latter two cases involved questions of medical malpractice which almost always require expert testimony. *Rodriguez v. Jackson*, 118 Ariz. 13, 574 P.2d 481, 485 (App.1977); 2 J. Dooley, Modern Tort Law § 34.32, at 517 (1977); 2 F. Harper & F. James, The Law of Torts § 17.1 at 968 (1956). In the remaining case, *Miller*, the court characterized the conduct in question, home building, as a "complicated activity" for which "the average layman has neither training nor experience." According to the court:

"[T]he issue as to whether or not the Miller home had been negligently constructed involved a multitude of subsidiary questions bearing not only upon the erection of the structure itself but also upon the location of the house on the particular lot, the elevation of the lot, the influence of the surrounding terrain, the possibility of run offs and floods, and the existence of the debris dam. These were not questions which the jury could have resolved from their common experience and the trial judge properly concluded that the issue of the allegedly negligent construction of the Miller residence was one within the knowledge of experts only."

*Id.* 505 P.2d at 202.[4]

## II. *Res Ipsa Loquitur*

At trial, and over timely objection by appellant, the court gave three instructions pertaining to *res ipsa loquitur*. Appellant claims that the giving of these instructions constituted error because there was no evidence establishing the necessary foundational facts to permit application of *res ipsa loquitur*.

■ There are three prerequisites to the application of *res ipsa loquitur*: (1) the event must be of a kind which normally does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclu-

---

4. Moreover, we are not certain that we would resolve a fact pattern similar to that presented in *Miller* as the *Miller* court did.

sive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. *Widmyer v. Southeast Skyways, Inc.*, 584 P.2d 1, 13 (Alaska 1978); W. Prosser, Torts § 39, at 214 (4th ed. 1971). Appellant claims that the evidence was lacking with respect to the first two requirements.

Appellant first asserts that the testimony at trial indicates that collapse of trailers similar to No. 080 is almost always preceded by active negligence by those handling the trailer. Since appellant had delivered control of the trailer to C.F. Braun prior to the accident, appellant argues that there is no evidence to show that the accident was of a type which ordinarily only occurs through appellant's negligence. Appellant therefore maintains that the first prerequisite for application of *res ipsa loquitur* is not satisfied.

Appellant, however, misconceives the first requirement of *res ipsa loquitur*. For that doctrine to apply it is not necessary to show that the accident would not have occurred in the absence of *defendant's* negligence. Rather a plaintiff need only show that the accident is of a type that normally does not occur unless *someone* has been negligent. Appellant appears to confuse the first requirement of *res ipsa* with the second requirement—exclusive control. Of course, plaintiff at some point must bring the negligence home to the defendant, but that is the function of the exclusive control requirement. *Newing v. Cheatham*, 15 Cal.3d 351, 124 Cal.Rptr. 193, 540 P.2d 33, 41 (1975); *Hoven v. Kelble*, 79 Wis.2d 444, 256 N.W.2d 379, 384 (1977); Prosser, *supra* at 218; F. Harper & F. James, *supra* at § 19.7.

In the present case, it is more likely than not that there was negligence associated with the cause of the accident. Unlike the case where a tire blows out or someone

falls down some stairs, both of which may, and frequently do, occur without negligence, a trailer ordinarily does not collapse unless someone has been negligent. *See* Restatement (Second) Torts § 328D, comment c (1965). Appellant concedes as much when it argues that collapse of a trailer is almost always preceded by negligence of the handlers. Therefore, the first requirement of *res ipsa loquitur* was satisfied.

Appellant's second argument is that it did not have exclusive control of the trailer at the time of its collapse and, therefore, the negligence of C.F. Braun's employees is the most likely cause of the accident. Appellee, citing *Zentz v. Coca-Cola Bottling Co.*, 39 Cal.2d 436, 247 P.2d 344 (1952), asserts that if he can eliminate the possibility of negligence by subsequent handlers, the fact that appellant has relinquished control of the trailer at the time of the accident does not preclude the application of *res ipsa loquitur*.

According to Professor Prosser, "control" is somewhat of a misnomer:

"The plaintiff who is riding a horse is in exclusive control of it, but when the saddle slips off the inference is still that it is the fault of the defendant who put it on."

Prosser, *supra* at 220. In fact, the Restatement does not even speak in terms of control, but requires only that "other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated...." Restatement (Second) Torts § 328D (1965). Thus, where several causes of an accident are equally probable, a plaintiff may still avail himself of *res ipsa loquitur* by presenting evidence which tends to eliminate all but those causes resulting from defendant's negligence.[5]

In the exploding bottle cases, for example, the plaintiff must show that the bottle was not cracked because of mishandling after it left the defendant's plant. The showing need not be conclusive, but only

---

**5.** *McAndrews v. Goody Co.*, 460 F.Supp. 104, 106–07 (D.Neb.1978); *Bedford v. Re*, 9 Cal.3d 593, 108 Cal.Rptr. 364, 510 P.2d 724, 726–27 (1973); *Putensen v. Clay Adams, Inc.*, 12 Cal. App.3d 1062, 91 Cal.Rptr. 319, 327 (1970); *Pastour v. Kolb Hardware, Inc.*, 173 N.W.2d 116, 125 (Iowa 1969); *Thomas v. Chatman*, 282 So.2d 783, 786 (La.App.1973); *Cusumano v. Pepsi-Cola Bottling Co.*, 9 Ohio App.2d 105, 223 N.E.2d 477, 480–82 (1967); *Hoven v. Kelble*, 79 Wis.2d 444, 256 N.W.2d 379, 383–84 (Wis. 1977); Restatement (Second) Torts § 328D, comment g (1965).

such as to show the greater probability.[6] *Zentz v. Coca-Cola Bottling Co.*, 247 P.2d 344 (1952), was such a case. There the court stated:

> "[I]t is settled that the fact that the accident occurs some time after the defendant relinquishes control of the instrumentality which causes the accident does not preclude application of the doctrine provided there is evidence that the instrumentality had not been improperly handled by the plaintiff or some third person, or its condition otherwise changed, after control was relinquished by the defendant."

*Id.*, 247 P.2d at 348.

■ At trial, Haragan adduced evidence to show that the trailer's load was within its rated capacity, that the trailer was not damaged when picked up for spotting, that the trailer was properly spotted on solid ground with the brakes properly set, and that the trailer was properly loaded. In our opinion, such evidence was sufficient to eliminate the probability of negligence by C.F. Braun's employees. Therefore, the exclusive control requirement was also satisfied.

Finally, appellant argues that where a plaintiff relies upon *res ipsa loquitur* in suing a defendant who merely maintained or provided the instrument involved in the accident, plaintiff must also negate negligence on the part of the manufacturer or, in the alternative, maintain an action against both parties. Appellant cites two "elevator fall" cases which fairly state the question at issue. In *Bias v. Montgomery Elevator Co.*, 216 Kan. 341, 532 P.2d 1053, 1057–58 (1975), the court held that the responsibility of an elevator maintenance company does not extend to manufacturing defects. Therefore, to take advantage of *res ipsa loquitur* a plaintiff must show that it was probable that the accident was caused by negligent servicing rather than negligent manufacturing. Since, in that case, plaintiff produced no such evidence, the court denied recovery on the theory of *res ipsa loquitur*.

*Bias* was distinguished in *American Elevator Co. v. Briscoe*, 572 P.2d 534 (Nev. 1977). In that case, which involved similar facts, the court stated that:

> "*Res ipsa loquitur* is a balancing doctrine, and while the plaintiff need not show the exact cause of an injury he must at least show that it is more probable than not that the injury resulted from the defendant's breach of duty. If that is shown, an inference of negligence on the part of defendant arises, and it is then incumbent on the defendant to come forward with rebuttal evidence."

*Id.* 572 P.2d at 537. According to the court in *American Elevator*, the distinguishing feature in *Bias* was that there plaintiff had introduced no evidence tending to put the blame on the defendant. In contrast, the plaintiff in *American Elevator* did produce sufficient evidence to show that the stoppage of the elevator might have been attributable to the defendant's inadequate maintenance. Hence, in *American Elevator* the burden was held to have been properly shifted, while in *Bias, res ipsa* was held inapplicable altogether.

■ Although appellant urges that *Bias* and *American Elevator* are inconsistent and that this court should follow *Bias* as the better reasoned of the two, we think the two opinions can be harmonized. Moreover, the reasoning in *American Elevator* seems particularly appropriate in the present case. Here appellee did introduce evidence sufficient to raise an inference that negligent maintenance was more probably than not the cause of the trailer's collapse. To require a plaintiff also to show the absence of a manufacturing defect when such knowledge is more readily available to the defendant is inconsistent with the purpose of *res ipsa loquitur*. In *Bias* the court stated:

> "The rationale behind the doctrine is said to be that when the defendant has exclusive control of the instrumentality

---

**6.** *See Quin v. George Washington Univ.*, 407 A.2d 580, 585 (D.C.App.1979); *Fender v. Colonial Stores, Inc.*, 138 Ga.App. 31, 225 S.E.2d 691, 696–97 (1976); *Chisholm v. Mobil Oil Corp.*, 45 A.D.2d 776, 356 N.Y.S.2d 699, 702 (App.Div.1974).

he has it within his power to produce evidence of the cause of the injury, while the plaintiff is without such knowledge and must therefore rely on proof of the circumstances."

532 P.2d at 1056.

The harshness of requiring a plaintiff to negate the possibility of negligence by the manufacturer is particularly apparent in a case such as this, where the plaintiff has been deprived of the means of discovering a manufacturer's defect through the fault of the defendant. Therefore, we hold that in the circumstances of the present case, appellee was not required to expressly negate the possibility of a manufacturing defect.[7] The application of *res ipsa loquitur* was, therefore, proper.

### III. Negligence Per Se

At trial the court incorporated the following language from 49 C.F.R. § 396.2(a) into a negligence per se instruction:

"Every motor carrier shall systematically inspect and maintain, or cause to be systematically maintained, all motor vehicles subject to its control ... to insure that such motor vehicles are in safe and proper operating condition."

The court instructed the jury that if they found that appellant had violated the above regulation and that such violation was a proximate cause of the trailer's collapse, such violation was negligence as a matter of law. Appellant alleges that the giving of such an instruction was error.

Appellant first contends that the language of 49 C.F.R. § 396.2(a) is too general and abstract to be incorporated into a negligence per se instruction. Appellant contends that a negligence per se instruction is only useful to the jury when it clarifies the standard of care which is owed.

Therefore, it argues, statutory commands expressed in general or abstract terms, or those which merely codify the common law standard of due care, should not be the basis for instructions on negligence per se.

This was essentially our holding in *Breitkreutz v. Baker*, 514 P.2d 17, 20–23 (Alaska 1973), which both parties agree is the leading analogous case. In *Breitkreutz*, we reviewed two regulations and determined that both were inappropriate for use as a negligence per se standard of liability on a motion for a directed verdict. The first regulation, 13 AAC 104.40(a), provided:

"The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."

As to this regulation, we had no difficulty concluding that the law "sets no precise standards that modify the common law" but only codifies the test of reasonable care. *Id.* at 20–21.

The second regulation, 13 AAC 104.91(a), provided:

"No person shall drive a vehicle upon a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event, speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

This regulation presented us with a much more difficult problem than did 13 AAC 104.40(a) because, while the first sentence of 13 AAC 104.91(a) is phrased in general terms, the second sentence is more specific

---

**7.** Although we hold that plaintiff need not show absence of a manufacturer's defect under these circumstances, we think that what evidence there was in the record militated against such a probability. At the time of its collapse, trailer No. 080 was approximately two years old and had traveled nearly 70,000 miles. While we would not go so far as to say that this evidence negates the possibility of a manu-

facturing defect, we do think that at some point "increased longevity must yield a progressively stronger inference that a given product ... was not defective but failed from extrinsic causes." *Mullen v. General Motors Corp.*, 32 Ill.App.3d 122, 336 N.E.2d 338, 346 (1975); *see Genteman v. Saunders Archery Co.*, 42 Ill.App.3d 294, 355 N.E.2d 647, 652 (1976); *Quirk v. Ross*, 257 Or. 80, 476 P.2d 559, 563 (1970).

(i. e., the second sentence cautions drivers in *every event* to control their speed "as may be necessary to avoid colliding with ... [a] vehicle..."). Nevertheless, we found the regulation inappropriate for directing a verdict based on negligence per se. In so doing, we rejected the appellant's argument that the mere collision was sufficient to show violation of the regulation and, thus, negligence per se. In *Breitkreutz*, the specific language of the regulation had been subsumed into the general language. The standard was not so specific that its violation would in all cases constitute negligence; rather, that determination would turn on the application of reasonableness as the standard of care. Thus the following standard was adopted:

> "In other words, if a positive and definite standard of care has been established by legislative enactment whereby a jury may determine whether there has been a violation thereof by finding a single issue of fact, a violation is negligence per se; but where the jury must determine the negligence or lack of negligence of a party charged with the violation of rule of conduct fixed by legislative enactment from a consideration and evaluation of multiple facts and circumstances by the process of applying, as the standard of care, the conduct of a reasonably prudent person, negligence per se is not involved."

*Breitkreutz*, 514 P.2d at 23.

In the present case, appellee argues that, unlike the regulation in *Breitkreutz*, the language of 49 C.F.R. § 396.2(a) is not limited by any general clauses. Hence the jury could ascertain whether the appellant violated the regulation by finding a single issue of fact: did appellant "systematically inspect and maintain" his vehicles? We agree that the command that operators of motor vehicles shall "systematically inspect and maintain" their vehicles is not a general duty, but a specific one. It requires operators to inspect their vehicles with some regularity and indicates that if they do not, the regulation is violated.

Appellant next argues that even if the language of 49 C.F.F. § 396.2(a) is appropriate for use in a negligence per se instruction, the court nevertheless erred in giving such an instruction. Citing *Ferris v. Chugach Electric Ass'n*, 557 P.2d 763, 767 (Alaska 1976), appellant maintains that appellee was required to show, as a prerequisite to the giving of a negligence per se instruction, that systematic inspection would have revealed the defect.

*Ferris*, however, is distinguishable. In *Ferris* the statute sought to be used as the basis for a negligence per se finding required Chugach Electric to inspect its lines and equipment "from time to time." The facts showed that one day prior to the accident giving rise to plaintiff's action, plaintiff had erected a structure which came dangerously close to defendant's power lines. We held that any failure by Chugach to discover the danger in the one day that the danger existed was not sufficient to constitute a violation of the statute. Here the situation is manifestly different. The corrosion on the landing gear was readily observable and had built up over time. In this case systematic inspection undoubtedly would have revealed the defect.[8]

## IV. Duty To Disclose

Instruction No. 23 advised the jury that appellant had a duty to use reasonable care to make the trailer safe "or to disclose the actual condition of the trailer to those who may be expected to use it." Appellant asserts that this was error because there was no evidence in the record indicating that appellant knew of any dangerous condition. We disagree.

8. We are not persuaded by appellant's argument that by using the phrase "to insure that such motor vehicles are in safe and proper operating condition," the statute may have misled the jury into believing that appellant was an insurer of the safety of his vehicles. Although "to insure" is an unfortunate choice of words, we think in the context in which they were used a reasonable person would not take their meaning literally but would understand them to mean no more than "assure" or "increase the probability of." Moreover, to the extent that the phrase is misleading, any ambiguity could have been clarified by appellant in seeking appropriate instructions.

Instruction No. 23 is based on Section 392(b) of the Restatement (Second) of Torts (1965). That section states in language identical to that used in Instruction 23 that a supplier of chattels is subject to liability to those for whose use the chattel is supplied

"if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it."

Section 392(b) clearly imposes two duties upon a supplier of chattels: (1) the duty to inspect for defect, and (2) the duty to inform of defects found, *if any*. The section does not assume that the supplier knew of a defect. Rather, it looks from hindsight and says, given an accident caused by a defect, did the defendant take reasonable steps to discover and report the defect? Thus any lack of evidence bearing on appellant's knowledge of a defect is not determinative, and we find no error in giving the instruction.

### V. Testimony of Dr. Taggart

At trial Dr. Raymond Taggart, an expert in mechanical engineering and metallurgy, testified on behalf of appellee regarding the failure of the landing gear. Because appellant failed to preserve the collapsed landing gear, Dr. Taggart's testimony was necessarily based upon the review of photographs of the collapsed landing gear and a physical examination of the landing gear used to replace the one damaged when Trailer No. 080 collapsed. The replacement landing gear may or may not have been of the same type as its predecessor. Although the court admitted Dr. Taggart's testimony, it instructed the jury that the parties had stipulated that the strut examined by Dr. Taggart was not the same strut involved in the accident.

Appellant maintains that Dr. Taggart's testimony lacked proper foundation because there was no testimony that the landing gear which Dr. Taggart examined, and upon which his testimony was based, was of the same type as that used on Trailer No.

080. Initially, we note that, although appellant appears to object to all of Dr. Taggart's testimony regarding the cause of the collapsed trailer, its objection at trial does not support such a broad argument. Our review of the record convinces us that appellant's objection applied to the following specific question:

"Okay. In your investigation of the trailer that you saw in Salt Lake City was the diagonal on that trailer of such a composition and so constructed that air could gain access to the interior of the strut?"

Our inquiry thus narrows to whether the court erred in allowing Dr. Taggart to give his opinion in response to this question as to the composition of Trailer No. 080's replacement strut.

Admission of expert testimony is a matter entrusted to the discretion of the trial court. *Handley v. State*, 615 P.2d 627, 630 (Alaska 1980); *D.H. v. State*, 561 P.2d 294 (Alaska 1977); *Poulin v. Zartman*, 542 P.2d 251 (Alaska 1975). Since the court specifically cautioned the jury that Dr. Taggart had not examined the strut actually involved in the accident, it is our opinion that admission of such testimony was not an abuse of discretion.

Appellant, however, maintains that expert testimony is objectionable if its relevance is not established by evidence contained in the record. Because there was no evidence the examined strut was similar to the assertedly defective strut, appellant argues that it was an abuse of discretion to admit Dr. Taggart's opinion. Appellant relies on our decision in *Zerbinos v. Lewis*, 394 P.2d 886, 888 (Alaska 1964). That case, however, dealt with the proper foundation for a hypothetical question and is, therefore, not relevant here.

Although Dr. Taggart did speculate about what kind of steel was used to make the strut and about the dimensions of the failed strut, the reason for his speculation was the unavailability of the failed strut, and that unavailability was caused by the appellant. It strikes us as unfair to allow

appellant to profit from its own lack of care in preserving the collapsed strut.

█ Having carefully considered the matter, we think that Dr. Taggart's testimony was properly admitted. In the absence of evidence to the contrary, Dr. Taggart's testimony, with appropriate cautionary instructions, was relevant as circumstantial evidence of the composition of the strut involved in the accident. Any deficiency in the testimony goes to the weight accorded the evidence by the jury. There was no error.

AFFIRMED.

BOOCHEVER and BURKE, JJ., not participating.