LAFATE WILLIE CORBETT, Appellant, *v.* THE
STATE OF NEVADA, Respondent.

No. 9870

September 29, 1978                                      584 P.2d 704

*Richard J. Legarza,* Winnemucca, for Appellant.

*Robert List,* Attorney General, Carson City; and *Richard A. Wagner,* District Attorney, Pershing County, for Respondent.

## OPINION

By the Court, Gunderson, J.:

Lafate Willie Corbett appeals his conviction for voluntary manslaughter. *See* NRS 200.050. Before trial, the parties and counsel stipulated to polygraph examinations of appellant and all eyewitnesses, and to admissibility of the results. However, the results being unfavorable to him, appellant objected to their admission at trial. In accord with the stipulation, the trial

court overruled the objection and admitted the polygraph results, which appellant contends was error. We disagree.

The admissibility of polygraph evidence upon prior stipulation is an issue of first impression in Nevada. Among other courts considering the issue, there is a split of authority.

Some courts, reasoning that polygraph evidence is unreliable and that a stipulation does not increase reliability, exclude the evidence. *See, e.g.,* Pulakis v. State, 476 P.2d 474 (Alaska 1970); State v. Corbin, 285 So.2d 234 (La. 1973); People v. Liddell, 234 N.W.2d 669 (Mich.App. 1975); Fulton v. State, 541 P.2d 871 (Okla.Crim. 1975); Lewis v. State, 500 S.W.2d 167 (Tex.Crim. 1973).

However, the majority rule is that polygraph results may be admitted upon prior stipulation. *See, e.g.,* United States v. Oliver, 525 F.2d 731 (8th Cir. 1975), cert. denied 424 U.S. 973, 96 S.Ct. 1477 (1976); State v. Valdez, 371 P.2d 894 (Ariz. 1962); State v. Molina, 573 P.2d 528 (Ariz.App. 1977); People v. Houser, 193 P.2d 937 (Cal.App. 1948); People v. Davis, 270 Cal.App.2d 841 (1969); Robinson v. Wilson, 44 Cal.App.3d 92 (1974); State v. Lassley, 545 P.2d 383 (Kan. 1976); State v. Ghan, 558 S.W.2d 304 (Mo.App. 1977); State v. Towns, 301 N.E.2d 700 (OhioApp. 1973); State v. Bennett, 521 P.2d 31 (Or.App. 1974); State v. Ross, 497 P.2d 1343 (Wash.App. 1972); Cullin v. State, 565 P.2d 445 (Wyo. 1977). Basic to this position is the consideration of fairness to the State as well as to the defendant. "Since the accused would undoubtedly rely on the results, if positive, it would be unreasonable to allow him to defeat their introduction because the results were unfavorable." Cullin v. State, cited above, at 457.

In State v. Valdez, cited above, the following procedural safeguards were set forth as prerequisite to the admissibility of polygraph evidence:

> (1) That the [prosecuting attorney], defendant and his counsel all sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state.
> (2) That notwithstanding the stipulation the admissibility of the test results is subject to the discretion of the trial judge, i.e., if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept such evidence.
> (3) That if the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross-examine the examiner respecting:
> a. the examiner's qualifications and training;
> b. the conditions under which the test was administered;

c. the limitations of and possibilities for error in the technique of polygraphic interrogation; and

d. at the discretion of the trial judge, any other matter deemed pertinent to the inquiry.

(4) That if such evidence is admitted the trial judge should instruct the jury that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged but at most tends only to indicate that at the time of the examination defendant was not telling the truth. Further, the jury members should be instructed that it is for them to determine what corroborative weight and effect such testimony should be given.

*Id.* at 900.

All of the above conditions have been met in the present case. Appellant, his counsel and the district attorney all entered into a written stipulation whereby appellant and three eye-witnesses submitted to polygraph examinations. It was further agreed "that the results of the examinations [would] be admissible into evidence at all stages of the proceedings against the [appellant]." The trial court found that the polygraph operator, Dr. David Raskin, was a reknowned expert in the field of psychology and polygraph examination. All of the charts were introduced into evidence, and Dr. Raskin was extensively cross-examined as to his findings. Finally, the court gave the requisite instruction.

Despite admitted compliance with all of the above conditions, appellant vigorously contends polygraph results are incompetent evidence as a matter of law, relying particularly on the language of American Elevator Co. v. Briscoe, 93 Nev. 665, 572 P.2d 534 (1977) and Warden v. Lischko, 90 Nev. 221, 523 P.2d 6 (1974), wherein this court stated: "Neither narco-interrogation nor the lie detector method has received court recognition as possessing the trustworthiness and reliability needed to accord the results the status of competent evidence. Vol. 3A, Wigmore, Chadbourne Revision, § 998, 999 (1970)." Warden v. Lischko, cited above, at 224.[1]

---

[1] While those cases discuss the general inadmissibility of polygraph evidence, the circumstances involved in each case were such that alternate grounds were clearly dispositive of the issue before the court. In *American Elevator,* the respondent's attorney had the polygraph test administered privately. Appellants inadvertently discovered that the test had been administered and sought to introduce the results to impeach respondent. The trial court precluded the evidence based primarily on the results being clothed by the attorney-client privilege. The court further rejected the results for want of adequate foundation and finally because the method employed was unreliable.

In the *Lischko* case the court stated that it was evident that the polygraph results in that case "had no bearing at all" upon the charge before the court. *State v. Lischko,* cited above, at 224.

Of course, our decisions in *American Elevator* and *Lischko* establish the rule followed in Nevada in the absence of stipulation, i.e.: that polygraph evidence is inadmissible to impeach or corroborate the testimony of a witness. The case before us presents an entirely different situation, however. In the present factual context, we are not bound to mechanical application of the language of our earlier authorities.

Manifestly, there exists substantial judicial recognition of the reliability and accuracy of the polygraph technique when conducted under certain conditions. United States v. De Betham, 348 F.Supp. 1377 (S.D.Cal. 1972), aff'd 470 F.2d 1367 (9th Cir. 1972), cert. den; 412 U.S. 907, 93 S.Ct. 2299 (1973); United States v. Ridling, 350 F.Supp. 90 (E.Mich. 1972). Similarly, scientific evidence confirming polygraph accuracy is abundant.[2] Still, despite recognition of the technique's potential accuracy, significant policy considerations militate against a general rule admitting results of polygraph tests which are performed without the concurrence of all parties. Foremost of these are fairness, and judicial efficiency. Inherent in the polygraph process are numerous variables which, if not properly monitered, can greatly reduce the reliability of the test results. It would be necessary to commit a very substantial amount of judicial time to evaluating foundation evidence, as well as to devising and enforcing court-imposed controls over the critical variables, in order to insure reliability under a rule admitting polygraph results generally.

Such concerns are no longer compelling, however, where the parties and counsel are afforded the opportunity, prior to the polygraph examination, to control by stipulation those variables deemed significant to fairness and reliability. A prime example is the stipulated selection of the examiner, whose ability is perhaps the single most important variable affecting the accuracy of polygraph. *See* United States v. De Betham, cited above.[3] Thus, a stipulation gives "an indirect assurance of accuracy," and, we believe, courts admitting polygraph evidence under stipulated controls apparently do so because of a

[2] Both of these instances of judicial recognition of the accuracy of the polygraph are pointed out along with others in a comprehensive article on the admissibility of polygraph evidence, Tarlow, *Admissibility of Polygraph Evidence in 1975; An Aid in Determining Credibility in a Perjury Plagued System,* 26 Hastings. L. J. 917 (1975). That article also establishes that scientific evidence of accuracy is plentiful. *Id.* at 931–934.

[3] Other variables which the parties may deem significant to fairness might include provision for: how, if at all, certain issues may be raised by the examiner; the environment in which the examination will be administered; who, if anyone other than the examiner and subject, will be present during the examination; tests to insure that any given subject is not under the influence of any drug which might enable the subject to "beat the test"; and the degree of conclusiveness required before test results will be admissible.

"tacit belief" in the accuracy of the technique when so utilized. Tarlow, cited in footnote 2.

In the case before us, the parties agreed in the selection of a well-recognized, competent examiner. There is no claim that counsel was ineffective or overlooked any significant factor in framing the stipulation. Likewise, there is no claim that the State failed to comply with its part of the bargain. Thus, the sole question here is whether a stipulation may be enforced where it is entered freely and voluntarily, with the assistance of adequate counsel.

In our view, to deny effect to such a stipulation would deprive both the court system and litigants of the opportunity to utilize a recognized scientific device, even though those involved believe its use can be fairly controlled and will aid in the administration of justice. A decision so rigid would, we think, be entirely inconsistent with the truth-discovery process.

Given judicial and scientific recognition that polygraph examinations achieve a valuable level of reliability when fairly and competently conducted, and given further that a stipulation provides a very significant indirect assurance of accuracy by allowing the parties to control matters potentially affecting fairness and reliability, we are constrained to hold that polygraph evidence may be admitted under the conditions expressed in State v. Valdez, cited above. Since all of those conditions have been met in this case, the district court properly admitted the polygraph evidence.

Affirmed.[4]

BATJER, C. J., and MOWBRAY, THOMPSON, and MANOUKIAN, JJ., concur.

---

[4]Richard J. Legarza having diligently represented appellant on appeal, through the preparation of briefs and upon oral argument, the district court is requested to enter an appropriate order providing for his compensation. Brackenbrough v. State, 92 Nev. 460, 555 P.2d 419 (1976).