423 So.2d 294 (1982)
Henry Joe WYNN
v.
STATE of Alabama.
7 Div. 946.
Court of Criminal Appeals of Alabama.
August 24, 1982.
Rehearing Denied October 12, 1982.
Certiorari Denied December 10, 1982.
*295 Charles Centerfit Hart and Myron K. Allenstein, Gadsden, for appellant.
Charles A. Graddick, Atty. Gen., and J. Thomas Leverette, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 82-48.
TYSON, Judge.
Henry Joe Wynn was indicted for robbery in the first degree. The jury found him guilty as charged, and the trial court set sentence at forty-five years in the penitentiary. A motion for a new trial was overruled and this appeal followed.
The appellant was positively identified by Mrs. Donna Jenkins as one of two men who entered the Quick Shop where she was employed, pulled a gun, and demanded all the money in the cash register. Although appellant denied participating in the robbery and presented several alibi witnesses to account for his presence during the time of the robbery in question, the State's evidence fully supported the verdict and there is no contention here to the contrary.

I
Appellant's primary argument urging reversal raises a question of first impression in Alabama: i.e., whether the results of a lie detector test taken by the accused, and not allowed in evidence, as a matter of law, are admissible upon stipulation of the parties.
Several days prior to trial, appellant, his counsel, and the assistant district attorney agreed in open court that appellant would voluntarily submit to a polygraph test, and all parties stipulated on the record that the "results", whether "favorable or unfavorable" to appellant, "would be admissible" at trial.
During the prosecution's case-in-chief, Investigator Cecil C. Holliday, polygraph examiner for the Etowah County Sheriff's department, testified for the State. He explained the operation of the polygraph machine and began to outline his qualifications for interpreting the test results, when appellant's counsel made the following objection: (R. page 72)
"MR. HART: Your Honor, excuse me. Doc your Honor, the Defendant, of course, is willing to stipulate the results of the test which Mr. Holliday gave.
"MR. MOORE: Your Honor, I
"MR. HART: But our agreement, as I understand, we didn't go into this but we are merely willing to stipulate the results of the test. But as far as stipulating anything about Doc's background or past with the polygraph, we object to that as not being relevant to what our agreement was.
"THE COURT: Overruled."
*296 After Holliday testified to his background and experience in polygraphy, he gave his opinion that polygraph examinations were "approximately 95% accurate." He then described the procedure used during his examination of appellant, and stated that appellant answered "no" to all four "relevant questions" asked during the test.[1] Holliday analyzed appellant's responses to questions 1, 3, and 4 as "deception indicated." He interpreted appellant's answer to the second question to show "no deception indicated."
His pre-trial stipulation notwithstanding, appellant now maintains that the court should not have admitted any of the polygraph evidence. In the alternative, he claims that the trial judge should have disallowed the testimony of Investigator Holliday and read to the jury the following proposed "Defense Exhibit I": (Vol. 11, R. page 360).

"STIPULATION
"In the opinion of C.C. Holliday, Polygraph Examiner for the Etowah County Sheriff's Department, based upon a polygraph test he gave, Henry Joe Wynn was not telling the truth when he denied being involved in the robbery of which he stands accused.
"You will be charged by me at the end of this trial as to the weight you shall give to this piece of evidence."
Thus, we must determine whether stipulated polygraph evidence is admissible at all, and, if so, whether the "results" stipulated in this case included all of the evidence later introduced.
We start with the recognition that Alabama, like most other jurisdictions,[2] rejects evidence derived from lie detector tests because the polygraph examination has "`not yet gained such standing and scientific recognition among physiological and psychological authorities as would justify the courts in admitting expert testimony deduced from the discovery, development, and experiments thus far made.' "Ex parte Dolvin, 391 So.2d 677, 679 (Ala.1980) (quoting Frye v. United States, 293 F. 1013, 1014 (D.C.Cir.1923)). See also Stewart v. State, 398 So.2d 369 (Ala.Cr.App.), cert. denied, 398 So.2d 376 (Ala.1981); Flurry v. State, 52 Ala.App. 64, 289 So.2d 632, cert. denied, 292 Ala. 720, 289 So.2d 644 (1973); Johnson v. State, 46 Ala.App. 725, 248 So.2d 763 (Cr.App.1971).
Although there have been numerous claims to the greater accuracy[3] of the polygraph since the Frye court determined in 1923 that the testing device had not achieved general scientific acceptance, the apparatus still has its critics,[4] and our Supreme *297 Court aptly observed in 1980 that "[T]he lie detector test has not gained the required acceptance in the intervening fifty-seven years," Ex parte Dolvin, 391 So.2d at 679.
Nevertheless, among the jurisdictions which have considered the question whether to allow polygraph evidence that has been stipulated to be admissible, there is a division of authority. See generally Annot., 53 A.L.R.3d 1005 (1973); Note, Admissibility of Polygraph Data When Both Parties Have Stipulated That It Will Be Admissible, 13 Land & Water L.Rev. 613 (1978); Note, 15 Ala.L.Rev. 248 (1962). The majority of courts have allowed the evidence, either upon a theory of waiver or estoppel,[5] or upon the satisfaction of certain conditions.[6] A sizeable minority of jurisdictions, on the other hand, has determined that polygraph evidence is inadmissible at trial under any circumstances.[7]
After careful consideration of the reasoning underlying both positions, it is our judgment that stipulated polygraph evidence should be admitted under certain circumstances, as we will set out herein. We acknowledge the validity of the contrary arguments, however, and we will attempt to outline them so that, in the future, parties may be able to arrive at their stipulations with some appreciation of the difficulties involved.
The courts which have rejected lie detector evidence, even when stipulated to be admissible, base their decisions on one or more of the following factors: (A) the polygraph test is based upon an untrustworthy premise; (B) the examiners have too little training, too much discretion, and wide inconsistency in the results; (C) the jury is likely to be over-awed by the examiner's opinion; and (D) although parties may stipulate to facts, they cannot, by agreement, alter the law so as to render inadmissible evidence admissible.

A. The Polygraph
The lie detector is based on the theory that conscious deception produces involuntary responses in the autonomic nervous system, manifested by changes in blood pressure, pulse, respiration, and skin resistance to electric current (known as "Galvanic Skin Reflex"). See generally, J. Reid and F. Inbau, Truth and Deception The Polygraph ("Lie-Detector") Technique (2d ed. 1977). The individual response varies with the state of mind and physical condition of the person being examined, however, and *298 certain characteristics can impair the reliability of the test.
For example, even proponents of the device acknowledge that an innocent but extremely nervous subject might register responses indicating deception. J. Reid and F. Inbau, supra at 216. Conversely, a guilty examinee might be able to "beat" the polygraph because he is unresponsive, has rationalized his offense, has had extensive prior questioning, or does not fear punishment. Id. at 224. The following additional variables can also affect the test results: fatigue; unusually high or low blood pressure; hardening of the arteries; obesity; asthma; allergies; use of drugs or alcohol; use of antiperspirant; and hiccups or coughs. See People v. Adams, 53 Cal. App.3d 109, 125 Cal.Rptr. 518 (1975); J. Reid and F. Inbau, supra at 234-35; Highleyman, The Deceptive Certainty of the "Lie Detector", 10 Hastings L.J. 47, 60 (1958). Those suffering from mental disease or retardation are also prone to register suspect responses. J. Reid and F. Inbau, supra at 247-48.

B. The Polygraph Examiner
The "lie detector" cannot detect a lie; it is the examiner who must analyze the subject's responses to the "relevant questions" in comparison with the "control questions" in order to determine physiological changes indicative of lying. The validity of the test results depends to a great extent, therefore, upon the expertise of the examiner. One court has noted that the skill required is more akin to an "art" than a science, United States v. Wilson, 361 F.Supp. 510, 512 (D.Md.1973), and it has been estimated that 80% of all polygraph examiners are unqualified. See Burkey, The Case Against the Polygraph, 51 A.B.A.J. 855, 857 (1965).
The American Polygraph Association requires a college degree and the administration of at least 200 polygraph tests. Annot., 53 A.L.R.3d at 1009. Alabama requires a college degree, or, in lieu thereof, five consecutive years of active investigative experience, plus a six months' internship. Ala.Code § 34-25-21 (1975). Both insist upon graduation from an approved polygraph school.
Assuming that the examiner is qualified, he is, according to one commentator, still capable of error and may even be able to influence the outcome of the test. Skolnik, supra, note 4, at 711. The holding of the Colorado Supreme Court in People v. Anderson, Colo., 637 P.2d 354 (1981), may have been due, in part, to the inability of polygraph examiners to agree.
In Anderson, the defendant took three polygraph tests and obtained three different results. The first, given by a local law enforcement examiner, was "inconclusive." The second, administered by the defendant's own hired expert, resulted in a finding that the defendant was telling the truth. Finally, the accused submitted to an independent examination and the results indicated that his answers had been "qualifiedly truthful." 637 P.2d at 356. The Anderson court held that lie detector evidence was "per se inadmissible" and observed, in dicta, that not even a stipulation would alter that determination.
Other courts have noted that if the outcome of the defendant's first test is unfavorable, he will want to "shop around" for an exam he can pass. See, e.g., Akonom v. State, 40 Md.App. 676, 394 A.2d 1213 (Ct. Spec.App.1978). Then, they fear, the trial will become a battle of experts, and the fact-finding inquiry will shift from the guilt or innocence of the accused to the reliability of the machine or its operator, e.g., People v. Anderson, supra 637 P.2d at 361, that is, to "trial by [or perhaps of] polygraph," United States v. Wilson, 361 F.Supp. at 513.

C. The Jury
Most courts rejecting stipulated lie detector testimony express the concern that the polygraph test usurps the function of the jury, e.g., State v. Biddle, 599 S.W.2d 182, 191 (Mo.1980); Fulton v. State, 541 P.2d 871 (Okla.Cr.App.1975), or will be given undue weight by the jury, e.g., State v. Corbin, 285 So.2d 234 (La.1973).
*299 In United States v. Alexander, 526 F.2d 161 (8th Cir.1975), the Court of Appeals for the Eighth Circuit observed that the lie detector is "likely to be shrouded with an aura of infallibility, akin to the ancient oracle of Delphi," and the jury is apt to give "significant, if not conclusive weight to a polygraphist's opinion." 526 F.2d at 168. See also, Radek, The Admissibility of Polygraph Results in Criminal Trials: A Case for the Status Quo, 3 Loy.U.Chi.L.J. 289, 295-96, 300-02 (1972).

D. The Stipulation
Finally, courts and commentators opposed to the admission of stipulated polygraph evidence question how a stipulation can alter the law so as to make unreliable evidence trustworthy and admissible. See, e.g., State v. Dean, 103 Wis.2d 228, 307 N.W.2d 628 (1981); Tarlow, Admissibility of Polygraph Evidence in 1975: An Aid in Determining Credibility in a Perjury-Plagued System, 26 Hastings L.J. 917, 954 (1975).
One answer to the question is provided by the following synthesis of the cases:
"For the moment, the stipulation cases stand only for the proposition that the courts will permit the parties to take a reasonable gamble with an experimental device where all agree, but none will be forced to do so."
Comment, The Truth About the Lie Detector in Federal Courts, 51 Temple L.Q. 69, 90 (1978).
We believe the answer to the question derives not from the fact that the stipulation somehow imbues the evidence with reliability, see, e.g., State v. Souel, 53 Ohio St.2d 123, 372 N.E.2d 1318, 1323 (1978), but from the fact that the parties are estopped, by their stipulated waiver of the right to object, from asserting the unacceptability of the evidence, see e.g., Cullin v. State, 565 P.2d 445, 457 (Wyo.1977). As the Wyoming Supreme Court observed:
"Since the accused would undoubtedly rely on the results, if positive, it would be unreasonable to allow him to defeat their introduction because the results were unfavorable."
Cullin v. State, supra at 457. See also State v. Lassley, 218 Kan. 758, 545 P.2d 383 (1976).
Furthermore, in view of the fact that an accused can waive certain constitutional rights, e.g., Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and statutory guarantees, e.g., Ala.Code § 15-11-1 (preliminary hearing), we see no reason why he should be prevented from waiving the protection afforded him by the rule in question here.
"Parties by their conduct, and especially by their agreements, may make that admissible which might otherwise not have been. These stipulations should be construed in the furtherance of justice. They should not be given a narrow, strict, or technical construction, but should be given a fair and liberal one, so as to carry out the apparent intention of the parties and permit a fair trial on the merits."
83 C.J.S. Stipulations § 23a at 49-50 (1953).
With the foregoing weaknesses of the polygraph method in mind, we hold that a pre-trial stipulation providing for a defendant's submission to the polygraph test and for subsequent admission of the results at trial is lawful and valid and should be given effect if the following conditions are met:
1. That the stipulation must be entered into by all parties the district attorney, the defendant, and the defendant's counsel, and must be a matter of record, either by a filed written document signed by all parties, Cf. Owens v. State, Ind.App., 373 N.E.2d 913 (1978) (State failed to sign), or by an oral agreement of the parties in open court, see State v. Marti, 290 N.W.2d 570, 587 (Iowa 1980),
2. That the stipulation, whether written or oral, should be preceded by the trial judge's informing the defendant of his right against self-incrimination, his right to refuse to submit to the test, see Schmerber v. California, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908, 916 (1966), and his right, under ordinary rules of evidence, *300 to have the fact or outcome of a lie detector test excluded.
That the trial judge should not accept the stipulation unless he is satisfied that the defendant understands the foregoing rights and waives them intelligently and voluntarily. See Commonwealth v. A Juvenile (No. 1), 365 Mass. 421, 313 N.E.2d 120, 127 (1974). In addition, we adopt the following conditions almost verbatim from the opinion of the Arizona Supreme Court in State v. Valdez, 91 Ariz. 274, 371 P.2d 894, 900-01 (1962);
3. "That notwithstanding the stipulation the admissibility of the test results is subject to the discretion of the trial judge, i.e. if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept such evidence.
4. "That if the graphs [or] examiner's opinion are offered in evidence the opposing party shall have the right to cross-examine the examiner respecting:
a. the examiner's qualifications and training;
b. the conditions under which the test was administered;
c. the limitations of and possibilities for error in the technique of polygraphic interrogation; and
d. at the discretion of the trial judge, any other matter deemed pertinent to the inquiry.
5. "That if such evidence is admitted the trial judge should instruct the jury that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged but at most tends only to indicate that at the time of the examination defendant was not telling the truth. Further, the jury members should be instructed that it is for them to determine what corroborative weight and effect such testimony should be given."
In the instant case, all of the foregoing conditions were fully met. The trial judge properly advised appellant of his rights and ascertained that appellant had waived them knowingly and voluntarily. In addition, the court found that Investigator Holliday was qualified as a polygraph examiner.
Holliday testified that he had been in the Criminal Investigation Division of the Army for eighteen years, had attended a fourteen week federal polygraph school in 1971, and had later served a one-year's apprenticeship. Thereafter, he taught at the federal polygraph school at Fort McClellan, Alabama for two years, and worked as Etowah County polygraph examiner for two years. He stated that he had conducted 800 lie detector tests prior to examining appellant. We find no error in the trial court's determination that Holliday was duly qualified.
Finally, the trial court's charge to the jury covered the instruction we have outlined above. The remaining inquiry is whether the trial court erred by allowing the State to introduce the qualifications and further testimony of Investigator Holliday concerning the administration of the polygraph test.
While we believe that the stipulation in the case before us could have been more precisely drawn, and was not a model of the "clear, concise and unequivocal" agreement described by the New Jersey Supreme Court in State v. McDavitt, 62 N.J. 36, 297 A.2d 849, 855 (1972), it is our judgment that the term "results" as used in the instant stipulation covered not only the examiner's final conclusion, but also certain background information necessary to an evaluation of his opinion.
In other words, we believe that the jury can properly assess the polygraph evidence only if they have the following necessary predicate information:
(1) the qualifications of the examiner;
(2) an explanation of how the polygraph works;
(3) the conditions under which the test was conducted.
Therefore, in the absence of stipulated terms to the contrary, we hold that the *301 "results" of a polygraph test encompass all the information given to the jury in the case before us, i.e., items (1)(3) above.
In conclusion, we note that many of the drawbacks of the polygraph method, outlined in Part I (A) and (B) of this opinion, may be overcome, or at least minimized, by the terms of the stipulation itself. The Supreme Court of Nevada observed, in Corbett v. State, 94 Nev. 643, 584 P.2d 704 (1978); that there are
"numerous variables, which if not properly monitored, can greatly reduce the reliability of the test results. [However,] parties can control by stipulation the variables deemed significant to fairness and reliability."
584 P.2d at 706. Further, one student author has noted the following benefit of the stipulation:
"[C]ounsel can bargain for the defendant to gain favorable or at least fair terms in the stipulation (e.g., submission to the test but not to any post-test interrogation)."
Comment, The Courtroom Status of the Polygraph, 14 Akron L.Rev. 133, 147 (1980).
The possibilities of the jury's relying too heavily on the lie detector evidence, as pointed out in Part I(C) here, can, we believe, be overcome by cross-examination of the polygraph examiner and the trial court's careful instruction to the jury. See State v. Valdez, supra 371 P.2d at 901.

II
Appellant next contends that the State improperly questioned one of his alibi witnesses regarding the details of a prior conviction. During cross-examination of the witness, the following occurred: (R. page 98)
"BY MR. MOORE: [Assistant District Attorney]
"Q. Let's start out by asking you a few questions about your record. Were you convicted of robbery of a Quick Shop January the 31st, 1975, robbing a Debbie Sue Thomas:
"A. (Nodding head affirmatively.)
"Q. Answer.
"A. Yes, sir.
"Q. You also were convicted of robbery of a Rosa N. Narrow at that Quick Shop.
"MR. HART: [Defense counsel] Your Honor, I would object to Mr. Moore specifying places. It's okay to ask him if he was convicted of certain crimes, or plead guilty to those crimes.
"THE COURT: Overruled."
Although a witness may be impeached by showing that he has been convicted of a crime involving moral turpitude, Ala.Code § 12-21-162 (1975); generally, only the name of the crime, the time and place of conviction, and the punishment imposed are proper inquiries, Favor v. State, 389 So.2d 556 (Ala.Cr.App.1980); Conley v. State, 354 So.2d 1172 (Ala.Cr.App. 1977); C. Gamble, McElroy's Alabama Evidence § 145.01(11) (3d ed.1977).
To be timely, however, an objection must be interposed as soon as the ground for the objection becomes apparent. Etheridge v. State, 414 So.2d 157 (Ala.Cr. App.1982); Smith v. State, 344 So.2d 1239 (Ala.Cr.App.), cert. denied, 344 So.2d 1243 (Ala.1977). As the portion of the transcript quoted above indicates, appellant did not object to the State's first question whether the witness had been convicted of "robbery of a Quick Shop January the 31st, 1975, robbing a Debbie Sue Thomas."
In our judgment, his later objection to another question also naming the victim and place of the crime was untimely and, therefore, correctly overruled. Etheridge v. State, supra.

III
Finally, appellant insists that the trial court erred in overruling his motion for a new trial. The motion alleged that he was denied a fair trial by the failure or refusal of one of the jurors to respond to a voir dire question asked by the State during the jury selection process.
The record before us does not contain the voir dire examination of prospective jurors, *302 but all parties agreed that when the assistant district attorney inquired whether any member of the panel was acquainted with appellant or his family, the juror in question, Mrs. Fleetwood, made no response.
At the hearing on the motion for new trial, appellant testified that he did not recognize Mrs. Fleetwood prior to striking the jury, but later in the trial he remembered that he knew her and had dated her daughter some three years earlier. Appellant recalled that Mrs. Fleetwood had once ordered him off her property and had threatened to "see [him] in jail." Thus, he claims, he was prejudiced by her non-disclosure and later service on the jury which convicted him.
Dorothy Wynn, appellant's mother, testified that she knew Mrs. Fleetwood and worked with her at Baptist Hospital in Gadsden, Alabama. She stated that she saw Mrs. Fleetwood in the hall before appellant's trial and said "hello" to her. Mrs. Wynn admitted that, at the time, she thought Mrs. Fleetwood "should have told the truth" when questioned during voir dire.
In addition, Mrs. Wynn acknowledged that she was in the room with her son and his attorney prior to striking the jury and, thus, had the opportunity to voice her disapproval of the prospective juror. Appellant's mother testified that she told defense counsel she knew Mrs. Fleetwood, but she could not recall whether she made the statement before or after the jury had been struck.
Appellant did not subpoena Mrs. Fleetwood for the hearing, and she was not called to testify by the State. The only witnesses presented were appellant and his mother.
The decision on a motion for new trial rests largely within the discretion of the trial court. Hewitt v. State, 389 So.2d 157 (Ala.Cr.App.1980), and, on appeal, this court indulges every presumption in favor of the correctness of the ruling. Smith v. State, 393 So.2d 529 (Ala.Cr.App.1981). In our judgment, the trial court was well within its discretion in discrediting appellant's testimony that he did not recognize Mrs. Fleetwood or that he was misled by her failure to respond to the voir dire question. As our Supreme Court observed in Williams v. State, 342 So.2d 1328, 1330 (Ala.1977):
"A defendant who has not been misled is not permitted to participate in the selection of the jury without objections, speculate on winning a favorable verdict, and, failing to do so, raise for the first time such questions on a motion for a new trial."
Moreover, we note that the motion for new trial did not comply with the following rule announced in Williams v. State, supra, at 1329:
"A motion challenging the composition of the grand jury, a petit jury, or qualifications of individual jurors, filed after the commencement of trial, must allege, and proof must show, that grounds for the motion were not known to the defendant before he went to trial, or that he could not have known them by exercising due diligence."
See also Watson v. State, 398 So.2d 320 (Ala.Crim.App.1980), cert. denied, 398 So.2d 332 (Ala.1981), cert. denied, 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981); Smiley v. State, 371 So.2d 469 (Ala.Cr.App. 1979). Smithson v. State, 50 Ala.App. 318, 278 So.2d 766 (1973).
We have examined the issues presented on this appeal and have found no error. This case is due to be and is hereby affirmed.
AFFIRMED.
BOWEN, J., concurs.
HARRIS, P.J., concurs in result.
DeCARLO and BARRON, JJ., dissent.
DeCARLO, Judge, dissenting.
Although I strongly believe that extreme care should be taken in invalidating agreements entered into by parties, it is my view that on this occasion we are obligated to do so because of Alabama's historical position of disallowing polygraph evidence.
*303 The United States Supreme Court has observed that "the proper administration of the criminal law cannot be left merely to the stipulation of the parties." Young v. United States, 315 U.S. 257, 258, 62 S.Ct. 510, 511, 86 L.Ed. 832 (1942). In my judgment, this is one of those instances where the stipulation of the parties cannot be allowed to control.
It is clear that the scientific community remains divided on the subject of polygraphy. Reed v. State, 283 Md. 374, 391 A.2d 364 (1978). One critical factor is that there are no means of verifying the results of a polygraph test by extrinsic evidence. Only polygraphers have performed studies demonstrating only scientific means of verification. No scientific studies have been performed with regard to verification. People v. Barbara, 400 Mich. 352, 255 N.W.2d 171 (1977).
The stipulation of the parties does little, if anything, to improve the reliability of the polygraph evidence. Even proponents of the use of polygraph evidence concede that the stipulation does little to increase realiability. Pulakis v. State, 476 P.2d 474 (Alaska 1970).
The majority's approach to polygraph testing may lead defendant's to "shop around" until they obtain favorable results, without divulging prior unsuccessful tests. See Akonom v. State, supra. It may also put the State to considerable expense in providing polygraph tests for indigent defendants who could not afford the test otherwise.
We should take note that although the State of Wisconsin has for some years allowed stipulated polygraph evidence to be admitted under substantially the same procedures outlined in the majority opinion, the Wisconsin Supreme Court recently declared polygraph evidence inadmissible. State v. Dean, 103 Wis.2d 228, 307 N.W.2d 628 (1981). The court recognized the pitfalls surrounding the admission of this type of evidence and quoted the following passage from the minority opinion in McLemore v. State, 87 Wis.2d 739, 751, 275 N.W.2d 692 (1972):
"[P]olygraphy in its present state may be useful as an investigative tool, but ... its limitations and potential for misleading fact finders are such that it should not be part of [the] evidentiary system."
Based on the foregoing reasons, I respectfully dissent.
BARRON, J., joins in the above.
NOTES
[1] Holliday stated that a "relevant question" relates to the incident in dispute. The subject's responses to those inquiries are then compared to innocuous introductory questions and to "control questions," those for which the answer is known and the examinee is likely to give a truthful answer. The relevant questions were: "(1) Were you in that Quick Shop on November the 23rd, 1981? (2) Did you take any part of that money from that Quick Shop? (3) Did you have a gun in that Quick Shop on November the 23rd, 1981? and (4) Did you receive any part of that money taken from that Quick Shop?"
[2] New Mexico and New York appear to be the only state court exceptions to the rule. There, the results of a lie detector test are admissible, even without a stipulation, provided the proponent of the evidence establishes the reliability of the procedure and the qualifications of the examiner. See State v. Dorsey, 88 N.M. 184, 539 P.2d 204 (1974); People v. Daniels, 102 Misc.2d 540, 422 N.Y.S.2d 832, 837 (N.Y.Sup. Ct.1979).
[3] See, e.g., Cureton, A Consensus as to the Validity of Polygraph Procedures, 22 Tenn.L. Rev. 728, 729 (1953) (97%); Pfaff, The Polygraph: An Invaluable Judicial Aid, 50 A.B.A.J. 1130, 1132 (1964) (99%); Wicker, The Polygraph Truth Test and the Law of Evidence, 22 Tenn.L.Rev. 711, 713 (1953) (95-98%); Note, The Polygraph and Probation, 9 Idaho L.Rev. 74, 75-76 (1972) (95%). But see S. Abrams, A Polygraph Handbook for Attorneys 105 (1977) (63%), noted in Comment, The Courtroom Status of the Polygraph, 14 Akron L.Rev. 133, 137 (1980); Burkey, The Case Against the Polygraph, 51 A.B.A.J. 855, 856 (1965) (75% or less).
[4] See, e.g., Burkey, supra, note 3; Levin, Lie Detectors Can Lie!, 15 Lab.L.J. 708 (1964); Skolnik, Scientific Theory and Scientific Evidence: An Analysis of Lie-Detection, 70 Yale L.J. 694 (1961).
[5] See Roleson v. State, 272 Ark. 346, 614 S.W.2d 656 (1981) (by implication); People v. Houser, 85 Cal.App.2d 686, 193 P.2d 937 (Dist. Ct.App.1948); Coney v. State, 258 So.2d 497 (Fla.Ct.App.), cert. denied, 262 So.2d 448 (Fla. 1972); State v. Chambers, 240 Ga. 76, 239 S.E.2d 324 (1977); State v. McNamara, 252 Iowa 19, 104 N.W.2d 568 (1960); State v. Lassley, 218 Kan. 758, 545 P.2d 383 (1976); State v. Bennett, 17 Or.App. 197, 521 P.2d 31 (Ct.App. 1974).
[6] See State v. Valdez, 91 Ariz. 274, 371 P.2d 894 (1962); Williams v. State, 378 A.2d 117 (Del.1977) (by implication); Owens v. State, Ind.App., 373 N.E.2d 913 (1978); Conley v. Commonwealth, Ky., 382 S.W.2d 865 (Ct.App. 1964) (by implication); Commonwealth v. A Juvenile (No. 1), 365 Mass. 421, 313 N.E.2d 120 (1974); Corbett v. State, 94 Nev. 643, 584 P.2d 704 (1978); State v. McDavitt, 62 N.J. 36, 297 A.2d 849 (1972); State v. Steele, 27 N.C.App. 496, 219 S.E.2d 540 (Ct.App. 1975); State v. Souel, 53 Ohio St.2d 123, 372 N.E.2d 1318 (1978); State v. Abel, 600 P.2d 994 (Utah 1979); State v. Ross, 7 Wash.App. 62, 497 P.2d 1343 (Ct.App. 1972); Cullin v. State, 565 P.2d 445 (Wyo.1977).
[7] See Pulakis v. State, 476 P.2d 474 (Alaska 1970); People v. Anderson, Colo., 637 P.2d 354 (Colo. 1981) (dicta); People v. Baynes, 88 Ill.2d 225, 58 Ill.Dec. 819, 430 N.E.2d 1070 (1981); State v. Corbin, 285 So.2d 234 (La. 1973); Akonom v. State, 40 Md.App. 676, 394 A.2d 1213 (Ct.Spec.App.1978); People v. Liddell, 63 Mich. App. 491, 234 N.W.2d 669 (Ct.App. 1975); State v. Biddle, 599 S.W.2d 182 (Mo. 1980); Fulton v. State, 541 P.2d 871 (Okla.Crim.App. 1975); Commonwealth v. Pfender, 280 Pa.Super. 417, 421 A.2d 791 (Super.Ct.1980); Romero v. State, 493 S.W.2d 206 (Tex.Crim.App. 1973); State v. Frazier, 252 S.E.2d 39 (W.Va.1979); State v. Dean, 103 Wis.2d 228, 307 N.W.2d 628 (1981). But cf. State v. Olmstead, 261 N.W.2d 880 (N.D.), cert. denied, 436 U.S. 918, 98 S.Ct. 2264, 56 L.Ed.2d 759 (1978) (stipulated evidence admissible at hearing on motion for new trial); People v. Barbara, 400 Mich. 352, 255 N.W.2d 171 (1977) (stipulated evidence admissible at post-conviction proceedings).